# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CODY FORD,

     Plaintiff,

v.                                                                    Case No. 8:25-cv-245-KKM-AEP

SHARKNINJA OPERATING, LLC,

     Defendant.

_____

## <u>ORDER</u>

Defendant SharkNinja Operating, LLC, moves to exclude plaintiff Cody Ford's sole expert, Mingxi Zheng, and for summary judgment on Ford's claims for strict product liability and negligence. As explained below, I grant the motion to exclude Zheng and grant in part the motion for summary judgment.

## I.     BACKGROUND

SharkNinja manufactures the Ninja Professional Plus Blender, model BL610. *See* Joint Statement of Undisputed Facts (JSUF) (Doc. 35) ¶ 1. The blender is "a food preparation appliance" and comes "with a removable stacked blade assembly, a pitcher, a lid with a locking handle, and a motor base." *Id.* Such blenders, when new, come packaged with those components and product literature. *See id.* ¶¶ 1–2. New blenders are designed to be packaged with a wrapped pitcher and cardboard inserts that must be removed before the user can access the blade assembly, which is packaged inside the pitcher. *See id.*

¶ 3; (Doc. 35-3) at 2–3. Per the design, the blade assembly should not "be loose or positioned outside the pitcher inside the box." JSUF ¶ 4.

Ford received the blender as a gift at her bridal shower in February 2023. *Id.* ¶ 5. The blender was in a box and after opening the box, Ford removed the "top pulp tray" which, according to the design, rests on top of the wrapped pitcher that contains the blade assembly. *See id.* ¶ 6; (Doc. 35-3) at 2–3. Thinking she was going to grab the pitcher, Ford then reached into the box where she grabbed the blade assembly instead and "severely lacerated her left pinky finger." *See* JSUF ¶ 7; Am. Compl. (Doc. 5) ¶ 19.

Ford is the only witness to "how the incident occurred." *See* JSUF ¶ 11. Further, the blender and its packaging were "discarded," and there are no photographs or documents depicting the state of the packaging at the time of the incident. *Id.* ¶¶ 12–13.

On January 30, 2025, Ford sued SharkNinja. *See* Compl. (Doc. 1) Ford asserts two claims: one for strict product liability (Count I) and one for negligence (Count II). *See* Am. Compl. ¶¶ 27–36. In support of her claims, Ford hired an engineering expert, Mingxi Zheng. *See* JSUF ¶ 14. Although Ford contends that SharkNinja is liable under design defect, manufacturing defect, and failure to warn theories, Zheng provides expert opinions only as to design defect and failure to warn. *See id.*; Am. Compl. ¶ 31; Resp. to MSJ (Doc. 38) at 2. SharkNinja moves to exclude Zheng's testimony, *Daubert* Mot. (Doc. 37), and

2

for summary judgment, MSJ (Doc. 36). Ford responds in opposition to both.

Resp. to *Daubert* (Doc. 39); Resp. to MSJ. SharkNinja replies in support of both.

*Daubert* Reply (Doc. 43); MSJ Reply (Doc. 44).

## II.    LEGAL STANDARDS

### A. *Daubert* Motion

Federal Rule of Evidence 702 governs expert testimony, providing:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

Trial courts must consider if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Thelen v. Somatics, LLC*, 156 F.4th 1115, 1131–32 (11th Cir. 2025)

3

(quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). The party seeking to introduce the expert at trial bears the burden of establishing qualification, reliability, and helpfulness. *Frazier*, 387 F.3d at 1260. An expert can be qualified to testify about certain matters based on his scientific training, education, knowledge, or experience in the field. *Id.* at 1260–61.

To determine whether an expert's scientific methodology is reliable, courts consider:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Id.* at 1262 (citation omitted). When applicable, these criteria "may be used to evaluate the reliability of non-scientific, experience-based testimony." *See id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Expert testimony generally helps the trier of fact to understand evidence or decide a fact at issue if the testimony "concerns matters that are beyond the understanding of the average lay person." *Id.* Expert testimony generally will not help the trier of fact if it "offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63. And, of course, simply because expert testimony meets the *Daubert* standard does not mean that the testimony is automatically admitted. *See id.* at 1263. Instead, courts must still

4

consider whether that expert testimony satisfies the other Federal Rules of Evidence. *See id.*

### B. Summary Judgment

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate a lack of genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, and so on) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I review the record evidence as identified by the parties and draw all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart,*

946 F.3d 1256, 1262–63 (11th Cir. 2020). Here, to the extent that the record is disputed or capable of multiple inferences, I draw them for the nonmovant.

## III.   ANALYSIS

### A. *Daubert* Motion

I begin with SharkNinja's motion to exclude Zheng. As a preliminary matter, Ford views only two of Zheng's opinions as relevant: that the blender was defectively designed because it lacked protective covers on a new blade assembly and that the warnings included with the blender are insufficient and do not comply with the proper standard for product safety signs and labels. *See* Resp. to *Daubert* at 3. Thus, I address SharkNinja's arguments only to the extent that they are relevant to potentially excluding those two opinions.

In two sentences, Zheng explains the methodology for all opinions in the report. *See* Zheng Report (Doc. 35-8) at 4. Her methodology consisted of applying the "scientific method," "[f]ailure analysis[,] and root cause analysis methodology." *Id.* No further explanation is provided. *See id.* This alone is enough to exclude Zheng's opinions. *See Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1330–31 (11th Cir. 2014) (affirming district court's exclusion of an expert who merely stated that "he reached his conclusion based on the scientific method, without further explaining how he tested his hypothesis to support his conclusions").

SharkNinja is correct that Zheng's design defect opinion should be excluded. The opinion, which consists of a single paragraph, states that it is predictable that a user might want to take apart the components of the blender upon first opening. *See* Zheng Report at 12. Thus, "SharkNinja could have included blade guards of some type." *Id.* Zheng reaches this conclusion by reasoning that blade guards would notify users "of the existence of sharp blades" and "guard[]" users "from the danger of a new unfamiliar product." *Id.* She notes that "Henckels knives are boxed with every knife blade covered by a thick paper covering." *Id.* Zheng does not explain how the scientific method, failure analysis, or root cause analysis methodology helped reach this conclusion. Zheng concludes that blade guards could have been included without, for example, identifying consumers' expectations for the packaging of such products, considering the cost of the guards themselves, or accounting for the effects of increasing the time or manpower needed to manufacture and package blenders with blade guards. *See Daubert* Mot. at 20. At most, she offers a cursory comparison to a product that has little in common with the product here beyond that both feature, in substantially different forms, a sharp edge. *See* Zheng Report at 12–13. Further, Zheng's opinion would not help the jury because it does not tell them anything "more than what lawyers for [Ford] can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63.

Ford's response regarding the methodological weakness is unpersuasive. It primarily consists of restating the relevant portion of Zheng's report and asserting that this "methodology" was sufficient. *See* Resp. to *Daubert* at 6–9. As to whether Zheng's testimony would assist the jury, Ford has effectively given the game away by representing that this "is an uncomplicated personal injury product liability action" and that the relevant legal questions here "are the type that do not require expert testimony." *Id.* at 1. I agree.

SharkNinja contends that Zheng is not qualified to offer expert testimony regarding the adequacy of the warnings. *Daubert* Mot. at 23–24. I agree. Nothing in Zheng's "qualifications" section of her report or her curriculum vitae indicates that she is qualified to opine on warnings. *See* Zheng Report at 4–5, 16–18. Indeed, another district court recently found her unqualified to testify to the adequacy of blender warnings. *See Serratos v. SharkNinja, Inc.,* No. 2:24-CV-04133-MRA-E, 2026 WL 974077, at *6 (C.D. Cal. Mar. 5, 2026). Further, courts often require experience or expertise in "human factors engineering"[1] or product warnings to opine on the adequacy of warnings. *See, e.g., Shiver v. Taurus Int'l Mfg., Inc.,* No. 5:22-CV-125-AW-MJF,

---

[1] "Human Factors is concerned with the application of what we know about people, their abilities, characteristics, and limitations to the design of equipment they use, environments in which they function, and jobs they perform." *Padula v. Carnival Corp.*, No. 16-23862-CIV, 2017 WL 7792714, at *5 (S.D. Fla. Oct. 13, 2017) (citation omitted).

2024 WL 1069944, at *2 (N.D. Fla. Feb. 14, 2024), *aff'd*, No. 24-10730, 2025 WL 573686 (11th Cir. Feb. 21, 2025) (per curiam); *Warren v. C. R. Bard, Inc.*, No. 8:19-CV-2657-T-60JSS, 2020 WL 1899838, at *2 (M.D. Fla. Apr. 17, 2020). Zheng has no expertise in human factors or product warnings.

Ford's resistance to this argument is ineffective: merely stating that Zheng "is a registered mechanical engineer and is qualified to opine on a household appliance like a blender" and identifying immaterial distinctions in the facts of *Serratos*. *See* Resp. to *Daubert* at 6, 10. Ford fails to meet her burden to establish Zheng's qualifications regarding this opinion.

I grant SharkNinja's *Daubert* motion and exclude Zheng's testimony.

### B. Summary Judgment

SharkNinja moves for summary judgment on Ford's strict product liability and negligence claims. It makes three arguments in support. First, because Zheng's expert testimony has been excluded, Ford fails to present admissible expert evidence, which is ordinarily required. MSJ at 5. Second, Ford's design defect theory fails as a matter of law because Ford cannot show that the defect proximately caused her injury. *See id.* at 5–6, 14–15. Third, even if I conclude that Ford is not required to present expert evidence, Ford still has no evidence from which a reasonable jury could conclude that the blender suffered a manufacturing defect or that the defect existed when SharkNinja last had possession of the blender. *Id.* at 5. Because its arguments

go to the lack of sufficient evidence to prove that the blender was defective, and that defect caused the injury—requirements under both strict product liability and negligence—SharkNinja contends that the claims rise and fall together, at least for the purposes of this motion. *See id.* at 7–8 (citing *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 17–18 (Fla. 4th DCA 2022); *Lesnik v. Duval Ford, LLC*, 185 So. 3d 577, 581 (Fla. 1st DCA 2016) (describing elements required for both kinds of claims). Ford does not contest this point.

Ford responds by arguing that, given the uncomplicated nature of this case, her design defect and manufacturing defect theories do not require expert testimony under Florida law. Resp. to MSJ at 7–10. Because she apparently agrees with SharkNinja that her failure to warn theory does require expert testimony, *see id.* (limiting her arguments to the other two theories), and I have excluded Zheng's testimony, I grant summary judgment on both the strict product liability and negligence claims insofar as their failure to warn theories. Ford responds to SharkNinja's second and third arguments by averring that the identified design defect proximately caused her injury and by identifying evidence creating a genuine dispute of material fact on the manufacturing defect theory. *See id.* at 10–13.

### 1. Expert Testimony

Ford is correct that, although a plaintiff typically must submit expert testimony to prove design and manufacturing defect theories, this rule is not

absolute. *See Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1297 (11th Cir. 2022) (affirming summary judgment after considering whether anything else in the record could have supported the defective design and manufacture claims once the relevant expert was excluded); *Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) (per curiam) (holding, in a products liability case, that, "[r]egarding discovery and proof of causation, in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required"); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 685 n.8 (11th Cir. 1984) ("[E]xpert testimony is *often* required to establish defective design of a product." (emphasis added)); *Thrasher v. Koehring Co.*, 543 So. 2d 754, 754 (Fla. 3d DCA 1988) (per curiam) (denying summary judgment for a defendant who produced expert testimony while the plaintiff sought to proceed to trial based on the plaintiff's testimony alone).

Ford is also correct that the facts of this "uncomplicated" case and her defective design and manufacturing theories are easily within the grasp of the jury, even without expert testimony. *See* Resp. to MSJ at 1, 7–8. The product is a common household appliance, and the defect theories do not involve a complex understanding of mechanical engineering. I decline to grant summary judgment on these two theories simply because I excluded Ford's expert.

11

## 2. Design Defect Theory

SharkNinja's argument is best summarized as contending that the design defect theory fails as a matter of law because Ford cannot show that the alleged defective design—a lack of blade guards on a new blender—caused the injury. *See* MSJ at 14–15. I agree.

"To assert a claim for a defective product, whether the claim is for negligence or strict liability, a plaintiff must show '(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier parted possession with the product.' " *Lesnik v. Duval Ford, LLC*, 185 So. 3d 577, 581 (Fla. 1st DCA 2016) (quoting *Cassisi v. Maytag Co.,* 396 So.2d 1140, 1143 (Fla. 1st DCA 1981)); *Doolin v. Ford Motor Co.*, No. 3:16-CV-778-J-34PDB, 2018 WL 4599712, at *10–*11 (M.D. Fla. Sept. 25, 2018) (describing the proximate cause requirement for both claims and collecting cases).

A design defect differs from a manufacturing defect. The former is an "intended configuration that may produce unintended and unwanted results" and the latter is "an unintended configuration." *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989); *see Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1347 (M.D. Fla. 2015).

Ford contends that SharkNinja's design is defective because it "does not guard the blades on its stacked blade assembly with paper, cardboard, or

plastic on the blades themselves" when it packages and ships them. Resp. to MSJ at 10–11. Even assuming that this is a defect, SharkNinja's decision to design the blender to ship with unguarded blades was not the proximate cause of Ford's injury. Recall that Ford reached into the box after removing the top pulp tray and while thinking she was going to grab the pitcher. JSUF ¶¶ 6–7. Had the blender been packaged according to SharkNinja's design, Ford's belief that she would next grab the pitcher would have been correct. Because the blade assembly was not inside the pitcher, Ford grabbed it instead and injured herself. Incorporating Ford's design "fix" would merely have SharkNinja place blade guards onto the blade assembly before packaging it inside the pitcher, which is turned on its side, secured with a cardboard "card," and wrapped in even more cardboard and plastic. *See* (Doc. 35-3) at 2–3. Under the blender's intended configuration, the blade guards would be a redundant, last line of defense against laceration that Ford would not have encountered at the time of her injury. *See* MSJ at 15. Ford's injury was proximately caused by the intervening apparent failure (whether done by SharkNinja or a third party) to package the blender or maintain the packaging configuration according to SharkNinja's design specifications.

Ford responds to SharkNinja's argument by claiming that proximate cause is for the jury to decide and that because she cut her finger while unboxing the product, the fact that the blades lacked guards is enough. Resp.

to MSJ at 11. In support of her first contention, she cites, without explanation, *Brito v. County of Palm Beach*, 753 So. 2d 109, 113 (Fla. 4th DCA 1998). I note that *Brito* instructs that "[o]rdinarily, the issue of proximate causation is one for the jury, unless the issue is so clear that reasonable people could not differ." *Id.* Here, the issue is so clear. I grant summary judgment on both the strict product liability and negligence claims relating to the design defect theories.

### 3. Manufacturing Defect

SharkNinja attacks Ford's remaining theory by averring that Ford's own testimony is an insufficient basis for a reasonable jury to find that a manufacturing defect caused her injury. I disagree.

"To prove a manufacturing defect claim under Florida law, a plaintiff must prove that 1) the product was defective, 2) the defect existed at the time the product left the defendant-manufacturer's control, and 3) the defect proximately caused the plaintiff's injuries." *Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1308 (S.D. Fla. 2025) (citation modified). "Under Florida law, a manufacturing defect requires (1) a product that 'does not conform to its intended design' such that it (2) fails to perform as safely as the intended design would have performed." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1363 (M.D. Fla. 2011) (citation modified).

SharkNinja contends that Ford has no evidence that the blender included a manufacturing defect. *See* MSJ at 12. To be clear, SharkNinja is not

14

arguing that a failure to package a product according to specifications is not, as a matter of law, a manufacturing defect. *See id.* Nor does it purport that the way the blender was packaged, if one takes Ford's description to be true, was not a manufacturing defect. *See id.* Rather, it claims that there are no witnesses to corroborate Ford's own testimony that she found the blender packaged as she describes. *Id.*

It is true that Ford does not have the blender, its packaging, or any photographic evidence of how it was packaged at the time of the injury. *See* JSUF ¶¶ 12–13. But Ford's testimony is enough to create a genuine issue of material fact. At her deposition she stated that, after opening the box, she "removed whatever the top layer of stuffing was, and then [her] left hand was the hand that went in to grab what [she] was assuming to be the plastic container that [she] could put into the dishwasher to begin the washing process." Ford. Dep. 27:10–14. Instead of the "plastic container," her hand grabbed the blade. *See id.* 27:15–17.

SharkNinja claims that Ford's testimony can be set aside as self-serving testimony by a plaintiff that is contradicted by the record because it is uncontroverted that, if a new blender is packaged with a loose blade assembly and all the other blender components, the box will not be able to close. *See* MSJ at 12–13. True, a court can, under certain circumstances, disregard a plaintiff's testimony at summary judgment. *See Feliciano v. City of Miami Beach*, 707

15

F.3d 1244, 1253–54 (11th Cir. 2013) (explaining that at summary judgment, courts do not have to accept a plaintiff's testimony when "it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law" (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). To do so here would be inappropriate for the simple reason that Ford's testimony is not blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law. In fact, as SharkNinja admits, her testimony indicates that items that should have been included in the box were missing. *See* MSJ at 13; Ford Dep. (Doc. 35-4) 31:20–25, 61:7–62:20. The fact that the box containing the blender and all its components cannot be closed if the blade assembly is outside the pitcher does not blatantly contradict Ford's testimony. SharkNinja does not identify any inconsistencies from Ford or otherwise explain how her testimony is so incredible that I should disregard it.

SharkNinja also argues that Ford lacks any testimony that the box left SharkNinja's control with the blade assembly packaged outside the pitcher. MSJ at 13–14. Because Ford received the blender as a gift and does not know where or when the blender was purchased, SharkNinja contends that Ford cannot establish any evidence from which a reasonable juror could conclude that the defect existed at the time the blender left SharkNinja's control. *See id.*

Again, Ford's testimony is enough to create a genuine dispute of material fact. She testified that "[t]he box was fully sealed, did not look damaged, had

16

just a typical Ninja blender that I would find in the store." Ford Dep. 27:21–23. She confirmed that the seal was "fully intact" and that the box was free from "damage or dents or tears" before she opened it. *See id.* 28:4–9. Ford testified that she "cut through the packaging tape" to open the box. *Id.* 29:16. This evidence is enough to permit a reasonable jury to infer that when the blender left SharkNinja's control the blender was packaged as Ford found it.

It is up to the jury whether they credit Ford's testimony over SharkNinja's arguments that it is more likely that a third party repackaged the blender. *See* MSJ at 13; *Thrasher*, 543 So. 2d at 754. I deny SharkNinja's motion for summary judgment on Ford's strict product liability and negligence claims insofar as they rely on the manufacturing defect theory.

## IV.    CONCLUSION

I grant SharkNinja's motion to exclude Ford's expert, Zheng. I grant in part SharkNinja's motion for summary judgment. Specifically, I grant summary judgment as to Ford's strict product liability and negligence claims insofar as they rely on design defect or failure to warn theories. Ford's claims of strict product liability and negligence can proceed to trial based on a manufacturing defect theory.

The following is therefore **ORDERED:**

1.    SharkNinja's *Daubert* Motion (Doc. 37) is **GRANTED**.

17

2.   SharkNinja's Motion for Summary Judgment (Doc. 36) is **GRANTED IN PART**. Specifically, the Court grants the motion regarding Ford's strict product liability and negligence claims to the extent that they rely on design defect or failure to warn theories. SharkNinja's summary judgment motion is otherwise denied.

**ORDERED** in Tampa, Florida, on June 1, 2026.

Kathryn Kimball Mizelle
United States District Judge

18